FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2017 JUL 21 AM 10: 35

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA, FLORIDA

| CYNTHIA V. ARANCA, | |
|---|---|
| Plaintiff, | CIVIL CASE NO. |
| vs. | 5:17-cv-340-OC-30 PRL |
| BANK OF AMERICA, N.A., A Delaware Corporation, | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

Plaintiff Cynthia V. Aranca, by and through the undersigned counsel, hereby sues Defendant Bank of America, N.A., and alleges the following:

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Cynthia V. Aranca is a natural person over the age of 21 and a resident of the State of Florida. Plaintiff will also be referred to as "Borrower."

2. Defendant Bank of America, N.A. is a Delaware Corporation with its principal place of business in the State of North Carolina. It engages in the business of servicing federally related mortgage loans secured by real property located throughout the United States, and the State of Florida, including the territorial jurisdiction of this Court. This Defendant will be referred to as "BOA" hereafter.

3. As a mortgage servicer, BOA is subject to various federal laws and administrative regulations governing its mortgage servicing activities. These laws and regulations include, but are not limited to, the Real Estate Settlement Procedures Act ("RESPA," 12 U.S.C. §2601, *et. seq.*), and its implementing regulation, Regulation X (12 C.F.R. Part 1024.35).

1

4. Plaintiff asserts a claim in this action arising under RESPA. Accordingly, this Court has federal-question jurisdiction over the RESPA claim pursuant to 12 U.S.C. §1331. In addition, Plaintiff also asserts a state law claim arising under the Florida Consumer Collection Practices Act, Section 559.72, Florida Statutes, referred to here after as the "FCCPA." Because there is complete diversity of citizenship between the parties and the amount in controversy including punitive damages exceeds $75,000, this Court has diversity jurisdiction to consider the FCCPA claim under 12 U.S.C. §1332.

5. The acts or omissions that give rise to this lawsuit either occurred in Marion County, Florida or relate to real property and other business transactions that occurred there. Accordingly, venue is proper in this Court.

## GENERAL ALLEGATIONS

6. Borrower owns a home located in Marion County, Florida. That home is subject to a mortgage lien as a result of a mortgage loan originated by Guaranty Residential Lending, Inc. in the amount of $111,934.00. BOA currently services the subject mortgage loan.

7. As a mortgage servicer, BOA is engaged in handling the accounting, customer service, collection, and virtually all other services related to managing the residential mortgage loans in its portfolio. For all practical purposes, BOA and other mortgage servicers generally appear to borrowers whose loan they service as the mortgagee or "lender." However, mortgage servicers often do not own mortgage debt that they service. The majority of residential mortgage loans in the United States belong to investors that contract with mortgage servicers to manage and administer those loans. These investors are mostly mortgage securitization trusts, referred to sometimes as "Real Estate Mortgage Investment Conduits" (REMICs), Collateralized Debt Obligations (CDOs), Collateralized Mortgage Obligations (CMOs), or secondary market

participants, such as the Federal National Mortgage Association (FNMA or Fannie Mae), or the Federal Home Loan Mortgage Corporation (FHMLC or Freddie Mac).

8. Because BOA might not own Borrower's mortgage loan, BOA might not be a party to the various contracts that give rise to the debt or security interest at issue in this case. Accordingly, BOA may be unable to enforce the contractual jury trial waiver provisions found in the mortgage.

9. Furthermore, neither BOA, nor the investor, would realize a financial loss if the subject mortgage loan were ultimately foreclosed and the collateral property sold for less than the balance due under the mortgage. The subject mortgage is fully insured by the Federal Housing Administration, an instrumentality of the United States government. This entity is referred to hereafter as "FHA." Accordingly, any loss resulting from a sale that was less than the amount of the debt would fall upon the FHA, and ultimately federal taxpayers.

10. In order to minimize the financial harm to that could result from preventable foreclosures, the FHA maintains detailed policies and procedures requiring mortgage servicers to offer borrowers who have difficulty making their payments various alternative payment arrangements in order to avoid foreclosure.

11. On August 7, 2013 Borrower and BOA entered into a special forbearance agreement that allowed Borrower to make reduced monthly payments and thereby avoid foreclosure. The special forbearance agreement required monthly payments in the amount of $651.28.

12. When it was determined that Borrower qualified for the special forbearance agreement, BOA applied FHA's relevant policies and procedures.

13. Beginning in August of 2013, Borrower began submitting the monthly payments required by the agreed upon special forbearance agreement.

14. In June of 2015, BOA offered Borrower a permanent loan modification with a payment of $562.35. Borrower was advised of this loan modification through phone calls placed by BOA's representatives. These phone calls were memorialized in business records maintained by BOA. These types of business records are frequently referred to in the mortgage servicing industry as "call logs."

15. The loan modification that BOA offered was an FHA-HAMP modification which requires at least three trial payments before the loan modification becomes permanent. Accordingly, BOA had been receiving the required payments at least since March of 2015.

16. Although BOA attempted to send Borrower the necessary loan modification documents for her to sign and return, for an unknown reason, those documents were never delivered to Borrower. Nevertheless, Borrower continued to pay the *higher* forbearance amount of $651.28 as opposed to the lower amount of $562.25 contemplated by the terms of the loan modification that BOA agreed to provide.

17. Despite receiving these payments, BOA sent borrower a letter dated August 12th, 2015 acknowledging that it had received a $651.28 payment from her on August 10th, 2015, but claiming that the loan was due for the "full contractual monthly payment" of $967.15. That letter also stated that the August 2015 payment would be held as "unapplied funds" and would not be credited to Borrower's account. The letter also mentions that, at that point in time, BOA was holding $3,946.76 in an "unapplied funds account", reflecting that the payments had not been credited to her account.

18. Several months after BOA began rejecting Borrower's payments, it brought a foreclosure lawsuit against her in state court.

19. BOA incorporated the special forbearance agreement into the foreclosure complaint, but incorrectly referred to it as a loan modification on three separate occasions.

4

## CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE REAL ESTATEMENT SETTLEMENT AND PROCEDURES ACT (RESPA), 12 U.S.C. § 2605

20. Borrower re-alleges and incorporates by reference the allegations in Paragraphs 1 through 19.

21. This is an action for actual damages, attorney's fees and litigation costs, brought pursuant to RESPA, 12 U.S.C. § 2605(e)(2), (f).

22. Borrower invoked the error resolution procedures authorized by RESPA and Regulation X (12 C.F.R. §1024.35) in order to notify BOA of two separate errors impacting her account. The first error was that BOA had failed to service the loan in accordance with the loan modification and was therefore pursuing a wrongful foreclosure against her. The second was that BOA had assessed Borrower an unauthorized "Litigation Management Fee." Bank of America failed to appropriately investigate, and correct, either of these errors.

23. Ms. Aranca, through counsel, sent her first Notice of Error October 7th, 2016 and advised BOA that it had approved her for a loan modification with a modified payment of $651.28, and that she had been making the required until Bank of America began rejecting those payments and erroneously brought a foreclosure lawsuit against her. Ms. Aranca's first Notice of Error incorporated a letter that Bank of America had sent her on August 7th, 2013 refencing her "successful[] completion" of a "Making Home Affordable loan modification." [1]

24. BOA responded by letter dated November 3rd, 2016 stating that it was "unable to locate a loan modification agreement that was approved in August of 2013" and pointing out that

---

[1] Borrower had sent an earlier version of her Notice of Error on September 22nd, 2016, but omitted the referenced attachment. Accordingly, the October 7th, 2016 version was simply a corrected version of the prior letter.

5

it did approve a "special forbearance agreement" in July of 2013 for a period of twelve months. BOA further stated in its response that "... the loan reverted back to its original terms" However, that statement was incorrect. As explained above BOA *did* offer Borrower a permanent loan modification in June requiring payments in a lower amount than the special forbearance agreement. Furthermore, Bank of America continued to accept Borrower's payments after extending that offer. Accordingly, BOA's assertion that the loan "reverted back to its original terms" was incorrect. Had BOA conducted a reasonable investigation, it would have known that the loan never reverted to its original terms because it had offered Borrower a permanent loan modification, Borrower had submitted payments that were actually higher than the amount required under the modification.

25. On November 10th 2016, Borrower sent BOA a second Notice of Error, which Borrower described as a "Supplemental Qualified Written Request Containing A Notice of Errors and a Request for Information." In that correspondence, Borrower explained that BOA had in fact offered Borrower a loan modification during the year of 2015, with a payment that was lower than the payment required by the special forbearance agreement that Borrower continued to make. Borrower also pointed out that BOA failed to deliver the documents necessary for Borrower to accept the loan modification.

26. In addition, Borrower also asserted that BOA had wrongfully charged borrower a "Litigation Management Fee."

27. On December 5th, 2016, Bank of America acknowledged receipt of Borrower's Second Notice of Error.

28. On January 17th, 2017 Borrower sent another letter to Bank of America pointing out that it had failed to substantively respond to the Second Notice of Error within the deadline established by RESPA and Regulation X. That letter was sent by overnight delivery.

29. BOA responded to the Second Notice of Error by letter dated January 19th, 2017. This response was sent outside the deadline imposed by RESPA and Regulation X. In that response BOA insisted that its "records" confirmed that it had sent Borrower an agreement in connection with the permanent loan modification dated via Federal Express, and that Borrower failed to sign and return that document

30. BOA also maintained that the assessment of the "Litigation Management Fee" was appropriate, claiming that the "Litigation Management Fee" differed from foreclosure related fees and costs "in that they are associated with the defense of Bank of America in an active litigation case, whereas foreclosure fees and costs are associated with the handling of the foreclosure case..." Notably, at that point in time, Borrower had not brought any affirmative claims against BOA.

31. Borrower, through counsel, sent a letter dated January 23rd, 2017 pointing out that the January 19th response was untimely and requesting copies of the "records" relating to the delivery of the loan modification referenced in OA's response. This letter also points out that, at that point in time, Ms. Aranca had not asserted any claims against BOA and that, although it was not clear that a BOA could charge the borrower for a fee for pursing affirmative claims, she had not done that and there was no basis therefore to assess a "Litigation Management Fee" to her account. Accordingly, Borrower once again reiterated her request that BOA remove this fee.

32. BOA responded by letter dated March 20th, 2017. That letter included the requested records as enclosures. In this letter, BOA contradicted its earlier explanation claiming that "In this instance, the $350.00 in Litigation Management Fees stemmed from the customer filing an Answer on or about June 6th, 2016, in Marion County Case No. 2016-CA-000954."

33. Then, Borrower, through counsel, then sent a letter to BOA dated April 14th, 2017 pointing out that the records that BOA stated that it relied upon and that it provided to

counsel confirm that although a Federal Express envelope was sent on a specific date, those records also demonstrate that the package was not actually delivered on any date. Thus, far from confirming that BOA sent Borrower the loan modification documents for her signature, the records that BOA relied upon reflected that it failed to do so.

34. BOA responded to that letter by correspondence dated May 31st, 2017. In that response, BOA stated "[p]lease refrain from sending any additional requests pertaining to delivery confirmation for the referenced FedEx tracking numbers as our aforementioned previous response letters sufficiently addressed your concerns and there is no additional information Bank of America can provide." This response was insufficient because the only information that BOA provided confirmed that the loan modification agreement was never actually delivered to borrower.

35. RESPA require a mortgage servicer to respond to a notice of error in one of two ways:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;
> or
> (B) Conducting a *reasonable* investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.
>
> *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016) (Emphasis in *Renfroe*) citing 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1)(i).

36. In the case at bar, Bank of America consistently failed to respond to any of Borrower's RESPA related correspondence in the required manner. In response to Borrower's First Notice of Error, it focused on Borrower's confusion about the distinction between the special forbearance agreement and the loan modification while failing to mention that it actually did offer Borrower a permanent loan modification at a later date while falsely insisting that that the loan "revered to its original terms." BOA failed to timely respond to the second Notice of Error. BOA's belated response demonstrates that it failed to sufficiently review the records that it claims supporting its conclusion that no error occurred, because those records affirmatively demonstrated that it failed to actually deliver the loan modification documents to Borrower. BOA then further exacerbated those errors by failing to substantively address that point when Borrower brought it to BOA's attention through her subsequent correspondence.

37. Similarly, BOA failed to provide an accurate or consistent explanation for the assessment of the "Litigation Management Fee." In its first response, BOA claimed that the fee was assessed due to the Borrower's decision to pursue affirmative relief against BOA. While it is very questionable whether a mortgage servicer can legally charge borrowers for asserting an affirmative claim against the servicer, that explanation doesn't even apply in this case because Borrower had not asserted any claim against BOA at that point in time.

38. BOA's second explanation – the fee was assessed for filing an Answer – does not demonstrate that there was no error, even if accepted at face value. While a foreclosure plaintiff is generally entitled to recover prevailing party attorney's fees in a successful action, BOA explains that the Litigation Management Fee is assessed in addition to, and not instead of, foreclosure related attorneys' fees. Naturally, the filing of the Answer may increase the amount of hours expended on behalf of the foreclosure plaintiff, and that would result in the a corresponding increase in the amount of prevailing party attorneys' fees. However, BOA's

responses demonstrated that the "Litigation Management Fee" was assessed in addition to attorney fees and litigation costs associated with the prosecution of the foreclosure. Accordingly, BOA's second explanation that the "Litigation Management Fee" was assessed in response to Borrower's filing of an Answer to the foreclosure complaint fee, if true, would result in the borrower being charged a separate and additional fee in addition to any increased attorney's fees flowing from her decision to raise defenses. Furthermore, in the case at bar, the foreclosure was the product of a servicing error. Accordingly, Borrower's account should not be assessed any fee for raising this appropriate defense to the wrongful foreclosure.

39. In addition, Regulation X required BOA to provide Borrower with "…a statement of the reason or reasons" behind any determination that no error occurred. *See* 12 C.F.R. §1024.35(e)(1)(i). BOA failed to comply with this obligation by refusing to substantively address Borrower's point that the records it relied upon showed that the loan modification agreement was never delivered to her, and by offering contradictory and logically insufficient explanations for its assessment of the disputed "Litigation Management Fee."

40. Ultimately, the foreclosure lawsuit was resolved when Borrower entered into a loan modification agreement that required a substantially higher monthly payment than the 2015 loan modification. This payment was higher, at least in part, because it includes late fees, increased interest and finance charges that would not have been imposed if BOA had honored the 2015 loan modification, and litigation related expenses associated with the recent foreclosure, including the Litigation Management Fee.

41. As a result of BOA's violation of 12 C.F.R. § 1024.35(e)(1)(i), Plaintiff has been damaged.

42. Plaintiff's damages include, but are not limited to:

a. Damages equal to the amount of fees, penalties, late fees, finance charges, and expenses associated with the foreclosure litigation, including the litigation management fee that BOA wrongfully charged to Borrower's account in connection with its failure to implement the 2015 loan modification and the resulting foreclosure.

b. Attorney's fees and Postage and mailing costs for preparing and sending all of her related correspondence after her initial Notice of Error.

c. Emotional distress attributable to the continued prosecution of the wrongful mortgage foreclosure.

43. Borrower will be entitled to an award of reasonable attorney's fees and litigation costs if she prevails on his RESPA claims pursuant to 12 U.S.C. 2605(f)(3).

WHEREFORE, Borrower respectfully requests that this honorable Court enter judgment in her favor in the entire amount of her damages as determined at trial, together with an award of prevailing party attorney's fees and litigation costs.

## COUNT II. - VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA)

44. Borrower re-alleges and incorporates by reference the allegations in paragraphs 1 through 19 and 30, 32, and 36.

45. This is an action for actual damages, statutory damages, punitive, damages, attorney's fees and litigation costs brought pursuant to the Florida Consumer Collection Practices Act (hereinafter referred to as "FCCPA"), section 559.72, Florida Statutes.

46. Section 559.72(9) of the FCCPA prohibits any person engaged in collection of consumer debts from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such a person knows the debt is not legitimate or assert[ing] the existence of some other legal right when such person knows that the right does not exist."

47. Neither of BOA's explanations for the litigation management fee are adequate. BOA's first explanation for the "Litigation Management Fee" was that it was "... associated with the defense of Bank of America in an active litigation case, whereas foreclosure fees and costs are associated with the handling of the foreclosure case..." While Borrower doubts that BOA is permitted to unilaterally charge the borrower for the expenses associated with its defense in litigation, that explanation did not even apply because Borrower had not brought any claims against BOA at that point in time. Nevertheless, BOA continued impose that fee on Borrower's account, and to collect that fee through its handling of the payments that she tenders pursuant to the second loan modification.

48. BOA's second explanation, that the fee was assessed in response to Borrower's decision to file an Answer in the foreclosure is also insufficient. While BOA would be entitled to pursue recovery of reasonable attorney's fees incurred in connection with a valid foreclosure action, its own explanation concerning the "Litigation Management Fee" shows that these expenses are assessed *in addition* to attorney's fees associated with the prosecution of the foreclosure. Furthermore, in the case at bar, Borrower had a meritorious defense because the foreclosure was a direct result of the failure to honor the loan modification.

49. In the case at bar, Borrower's RESPA correspondence placed BOA on notice that Borrower disputed the assessment of the Litigation Management Fee, and that the original explanation for this fee (that it was associated with the BOA's defense in litigation) did not even apply. Accordingly, BOA knew that it did not have a basis to pursue the Litigation Management Fee on grounds initially asserted.

52. Similarly, BOA's second explanation that the "Litigation Management Fee" was assessed because Borrower filed an Answer to the foreclosure is insufficient because there is no authority in the applicable agreements or relevant law for a mortgage servicer to assess

litigation related *in addition to* attorney's fees and litigation costs. As the Eleventh Circuit recently observed "[a] reasonable jury could read this contract [a similar residential mortgage], conclude that any reasonable lender reading the contract would have known that it could not charge estimated fees, and infer that Seterus had actual knowledge based on that conclusion." *Prescott v. Seterus, Inc.*, No. 16-15370, 2017 WL 1325255, at *2 (11th Cir. Apr. 11, 2017)

50. Section 559.77(2) authorizes the Court to award equitable relief prohibiting further violations of the FCCPA. This Court should enjoin BOA from continuing to assert the right to collect similar fees that include the erroneous charges.

51. Borrower has retained the undersigned to represent her in this action. Pursuant to the attorney fee shifting provisions of the FCCPA, Borrowers are entitled to an award of shifted attorneys' fees.

53. BOA's assessment of a "Litigation Management Fee" that it knows it has no legal right to collect constitutes "intentional misconduct" as defined by 768.72(2)(a), Florida Statutes, or alternatively represents a reckless disregard of Borrower's rights to be free from unwarranted charges constituting "gross negligence" as defined by 768.72(2)(b), Florida Statutes. Accordingly an award of punitive damages is appropriate.

*(Continued on Next Page)*

## JURY TRIAL DEMAND

54.  Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

**s/ Jeffrey N. Golant**

Jeffrey N. Golant, ESQ.
Fla. Bar No. 707732
jgolant@jeffreygolantlaw.com
Kevin Rajabalee, ESQ.
Fla. Bar No. 119948
krajabalee@jeffreygolantlaw.com
THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.
1999 North University Drive, Suite 213
Coral Springs, FL 33071
Tel:   (954) 942-5270
Fax:   (954) 942-5272
Counsel for Plaintiff Cynthia Aranca